[Cite as *Pringle v. Pringle*, 2023-Ohio-1335.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JOSEPH R. PRINGLE | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ARLIANNA R. PRINGLE | : | Case No. 22 CA 00096 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 22DR0136


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      April 24, 2023


APPEARANCES:

For Plaintiff-Appellant      For Defendant-Appellee

CHRISTIAN D. ROLAND      STACY J. JEWELL
P.O. Box 111      9 South Third Street
Buckeye Lake, OH  43008      Newark, OH  43055

*King, J.*

{¶ 1} Plaintiff-Appellant, Joseph R. Pringle, appeals the October 6, 2022 Judgment Entry - Decree of Divorce entered by the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division, granting a divorce to him and Defendant-Appellee, Arlianna R. Pringle. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 13, 2018, husband and wife were married. The parties have one child born February 2021. On February 18, 2022, husband filed a complaint for divorce. A hearing was held on October 4, 2022. By judgment entry - decree of divorce filed October 6, 2022, the trial court granted the parties a divorce, ordered husband to pay child support in the amount of $836.38 per month, and divided the parties' assets and debts.

{¶ 3} Husband filed an appeal with the following assignments of error:

I

{¶ 4} "THE TRIAL COURT ERRED IN TREATING THE MORTGAGE AS A MARITAL DEBT."

II

{¶ 5} "THE TRIAL COURT ERRED IN NOT ASSIGNING THE ELECTIVE SURGERY EXPENSE TO THE DEFENDANT-APPELLEE."

III

{¶ 6} "THE TRIAL COURT ERRED BY INCLUDING PLAINTIFF-APPELLANT'S NON-RECURRING OVERTIME AND BONUS INCOME IN THE CHILD SUPPORT CALCULATION."

IV

{¶ 7}   "THE TRIAL COURT ERRED WHEN IT FAILED TO DEVIATE FROM THE CHILD SUPPORT CALCULATION DUE TO THE PLAINTIFF-APPELLANT'S PERMANENT LOSS OF OVERTIME AND BONUS INCOME."

I

{¶ 8}   In his first assignment of error, husband claims the trial court erred in treating the mortgage as a marital debt.  We disagree.

{¶ 9}   As an appellate court, we generally review a trial court's property division in divorce proceedings under an abuse of discretion standard.  *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981).  *Accord Martin v. Martin,* 18 Ohio St.3d 292, 294-295, 480 N.E.2d 1112 (1985).  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 10} Wife purchased the marital home prior to the marriage.  At the time of the marriage, the home was appraised at $154,000.00.  T. at 62.  At the time of the divorce, the home was appraised at $205,000.00, and the outstanding mortgage on the home was $88,199.65.  T. at 56-57.  There was no discussion on the nature of this mortgage.  The parties stipulated during the marriage, $21,066.63 of marital funds were used to pay down the mortgage.  T. at 117-118.

{¶ 11} The trial court acknowledged the marital home was a combination of separate and marital property.  October 6, 2022 Judgment Entry at 22.  The trial court noted the remaining amount on the mortgage was $88,199.65, and the parties "stipulated

that the mortgage was a valid marital debt." *Id.* at 23.  Husband argues the parties did not stipulate that the mortgage was a valid marital debt.

{¶ 12} A review of the record does not indicate a specific stipulation regarding the mortgage as a marital debt, but it does indicate the mortgage was not a contested issue between the parties.

{¶ 13} During the hearing, prior to taking any testimony, the trial court diligently went through all of the issues to determine what was agreed upon and what was contested.  On the issue of the mortgage on the marital home, the trial court explained the numbers as follows: "Okay.  So two oh five (205) [current fair market value] and then we've agreed that eighty-eight one ninety-nine sixty-five (88,199.65) [mortgage] is the marital debt to come off of that."  T. at 119.  The trial court then went on to discuss the contested home equity loan and the $10,000.00 portion that was in dispute and stated: "So that aspect is left still in dispute, the ten thousand dollars ($10,000).  Everything else on the house is done though, is that correct?"  T. at 120.  Both parties responded in the affirmative.  *Id.*  Husband did not object to the $88,199.65 mortgage amount coming off the fair market value of the marital home.

{¶ 14} Having failed to object or contest the mortgage amount as marital debt, we find husband has waived any argument relative to the issue.

{¶ 15} Assignment of Error I is denied.

II

{¶ 16} In his second assignment of error, husband claims the trial court erred in not assigning wife's elective surgery expense to her.  We disagree.

{¶ 17} The parties had a home equity loan in the amount of $73,605.27.  Husband argued the loan was of mixed character, as wife spent $10,000.00 for cosmetic surgery

right before their separation. Wife argued the loan was all marital. The trial court found all of the home equity loan to be marital debt, as "the monies related to the surgery occurred during the marriage and was for a valid marital purpose." October 6, 2022 Judgment Entry at 23.

{¶ 18} On October 1, 2021, wife told husband she needed surgery for a deviated septum. T. at 148. Husband characterized the surgery as "a nose job." T. at 149. Wife testified the surgery consisted of fixing a deviated septum, correcting a missing "helix" in her ear, and fixing a breathing issue. T. at 168-169. She stated the cosmetic part of the surgery removed a bump and length from her nose. T. at 169. The surgery was performed on November 3, 2021, paid for in October. T. at 169, 184. Husband moved out of the marital home on November 5, 2021. T. at 150. At the time of the surgery, the parties had not yet filed for divorce, and wife was fully committed to the marriage. T. at 169, 174-175. Wife knew they were having trouble, but hoped they could make it work. T. at 175. Wife testified: "You know, like there was a lot of good and so I knew that we could be good. I kept saying all I got to do is get back on track and we can be fine again." T. at 183. Wife gave up on the marriage due to husband's actions after the surgery. T. at 171, 174-175, 183.

{¶ 19} On direct, husband was asked: "So did you form an opinion as to whether * * * this surgery was done in contemplation of the end of your relationship or time after that?" T. at 150-151. Husband responded: "Honestly, I'm not sure because it's twenty days after the money from the equity line of credit was deposited into the account and I had no prior knowledge of what day the money was spent until receiving the records." T. at 151.

{¶ 20} Based upon the testimony presented, we do not find the trial court abused its discretion in finding the entire home equity loan to be a marital debt.

{¶ 21} Assignment of Error II is denied.

III

{¶ 22} In his third assignment of error, husband claims the trial court erred by including his non-recurring overtime and bonus income into the child support calculation. We disagree.

{¶ 23} In computing annual income for child support purposes, "gross income" means in part, "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; * * * ."  R.C. 3119.01(C)(12).

{¶ 24} R.C. 3119.05(D) states the following:

(D) When the court or agency calculates the annual income of a parent, it shall include the lesser of the following as income from overtime and bonuses:

(1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;

(2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed.

{¶ 25} The trial court took husband's overtime and bonus pay for 2019, 2020, and 2021, averaged the numbers, and added the amount to his base pay. October 6, 2022 Judgment Entry at 16. Husband argues he has lost his overtime and bonus income, so it should not have been included in the calculation.

{¶ 26} The hearing was held on October 4, 2022. Husband testified his overtime dropped considerably in 2022 so his income dropped drastically. T. at 144. His most current paystub prior to the hearing showed overtime and bonus pay. T. at 145-146. When questioned about overtime and bonuses for the remainder of the year, husband responded, "unlikely" for overtime and "no outlook" for bonuses. T. at 147.

{¶ 27} The trial court explained to husband he was following the law and was looking "at the three preceding years, average them, compare it to 2021, use the lower of the two amounts. Don't consider the overtime and bonuses for 2022." T. at 154-155. The trial court informed husband if in fact his income was significantly lower at the conclusion of 2022, he could file a motion to modify his child support amount and the trial court could revisit the numbers. T. at 154. The trial court stated husband "may wish to file a motion requesting a change of child support, should his annual overtime and bonuses show a significant reduction, at the end of the year." October 6, 2022 Judgment Entry at 19.

{¶ 28} Upon review, we find the trial court did not err in computing husband's income for child support purposes.

{¶ 29} Assignment of Error III is denied.

IV

{¶ 30} In his fourth assignment of error, husband claims the trial court erred by failing to deviate from the child support calculation due to his permanent loss of overtime and bonus income.  We disagree.

{¶ 31} Child support decisions, including the decision to deviate from the actual obligation, are reviewed under an abuse of discretion standard.  *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989); *Bible v. Bible,* 5th Dist. Coshocton No. 2018CA0001, 2018-Ohio-5147, ¶ 21; *Blakemore, supra.*

{¶ 32} R.C. 3119.22 states the following:

> The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not be in the best interest of the child.

{¶ 33} R.C. 3119.23 lists factors to be considered for deviation.  In support, husband cites subsection (Q), "[a]ny other relevant factor."  Husband argues the permanent loss of overtime and bonus income is a relevant factor.

{¶ 34} No testimony was presented that the loss of overtime and bonus income was permanent at the time of the hearing.  Husband's testimony was "unlikely" and "no outlook."  T. at 147.  While his employer had a customer pull its orders due to supply

chain issues, it was unknown if the problems could be rectified or if the company could land another account and increase its production numbers by the end of the year. T. at 142, 147-148. As stated above, husband's current payroll stub prior to the hearing was still showing overtime and bonus pay. T. at 145-146.

{¶ 35} The trial court granted husband a deviation for his extended parenting time, but did not deviate downward for husband's reduced overtime and bonuses, stating it was following the law under R.C. 3119.05(D) cited above. October 6, 2022 Judgment Entry at 18-19.

{¶ 36} Husband has not pointed to any evidence in the record that shows his child support amount "would be unjust or inappropriate and therefore not be in the best interest of the child." R.C. 3119.22.

{¶ 37} Upon review, we find the trial court did not abuse its discretion by failing to further deviate from the child support calculation.

{¶ 38} Assignment of Error IV is denied.

{¶ 39} The judgment of the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division, is hereby affirmed.

By King, J.

Gwin, P.J. and

Delaney, J. concur.

AJK/db

[Cite as *Pringle v. Pringle*, 2023-Ohio-1335.]